**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **KEVIN PANTER, individually and on behalf of a class of similarly situated individuals,** ) ) ) | FILED: APRIL 14, 2008<br>08 CV 2097   JH |
| **Plaintiff,** ) ) | JUDGE MORAN<br>MAGISTRATE JUDGE BROWN |
| **v.** ) ) | **Civil Action No. _____** |
| **ALLTEL CORPORATION<br>d/b/a ALLTEL WIRELESS,** ) ) ) | |
| **Defendant.** ) | |

<u>**NOTICE OF REMOVAL**</u>

Defendant Alltel Corporation, by its attorneys, DLA Piper US LLP, pursuant to 28 U.S.C. § 1441(a), § 1453(b), hereby removes this action from the Circuit Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois, Eastern Division. In support thereof, Alltel states as follows:

1.     On or about March 13, 2008, a putative "Class Action Complaint," captioned *Kevin Panter v. Alltel Corporation d/b/a Alltel Wireless,* Case No. 06 CH 09729, was filed in the Circuit Court of Cook County, Illinois, County Department, Chancery Division.  A copy of the "Class Action Complaint" ("Complaint") is attached hereto as Exhibit 1.

2.     Alltel Corporation is the parent company of Alltel Communications, LLC (hereinafter "Alltel").  Alltel, but not Alltel Corporation, provides cellular telephone services to subscribers nationwide.

3.     Alltel Corporation was served with a copy of the Complaint on March 14, 2008. A copy of the Summons and the confirmation of its service are attached as Exhibit 2.

4.     Plaintiff's Complaint contains two counts:  Count I for "Breach of Contract on behalf of the Class" and Count II for "Consumer Fraud on behalf of the Class."

5.     The allegations underlying both counts of Plaintiff's Complaint focus on "premium" text message services, also referred to in the Complaint as "mobile content," which are available to customers who allegedly receive cellular telephone service from Alltel Corporation.  (Complaint, ¶ 4.)

6.     Plaintiff further alleges that the providers of mobile content "partner" with third-party companies known as aggregators (including a company called m-Qube) to use the billing and collection mechanisms of cellular carriers to bill customers for the mobile content. (Complaint, ¶¶ 5, 10, 12-17.)

7.     Plaintiff further alleges that, through its relationships with aggregators like m-Qube, Alltel Corporation bills its customers directly for charges for mobile content provided by third parties.  (Complaint, ¶¶ 5, 10, 12-17.)

8.     Plaintiff alleges that, in breach of its contracts with Plaintiff and with other purported Alltel Corporation wireless telephone subscribers, and as part of "a deliberate and willful scheme to cheat large numbers of people," Alltel Corporation charges cellular customers for unauthorized "premium" text message services and other mobile content.  (Complaint, ¶¶ 7, 18-19, 20-28.)

9.     Plaintiff defines the putative class as "all Alltel wireless telephone subscribers in the nation" who were billed for unauthorized charges, and does not limit the class to unauthorized charges for any particular time period.  (See Complaint, ¶ 37.)

10.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because it is a class action where the amount in controversy exceeds $5,000,000 and Plaintiff and Alltel Corporation have the requisite diversity of citizenship.

11.    This case satisfies 28 U.S.C. § 1332(d)(2)(A) because Plaintiff (one member of the putative class of plaintiffs) is the citizen of a state different than that of Alltel Corporation. Plaintiff is a citizen of Illinois.  (Complaint, ¶ 1.)  For purposes of 28 U.S.C. § 1332(c)(1), Alltel Corporation is a citizen of the states of Delaware (where it is incorporated) and Arkansas (where it has its headquarters and principal place of business).  (Complaint, ¶ 2.)  Alltel is a citizen of the states of Delaware (where it is incorporated) and Arkansas (where it has its principal place of business).  Under 28 U.S.C. § 1332(c)(1), neither Alltel Corporation nor Alltel are citizens of the state of Illinois.

12.    This case satisfies 28 U.S.C. § 1332(d) because the amount in controversy is well in excess of $5,000,000.

13.    Among other relief, the Complaint seeks damages "against Alltel for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct." (Complaint, at 12.)  The Complaint also asks for reimbursement of amounts allegedly collected by Alltel Corporation for unauthorized "premium" text message services and other mobile content.  (Complaint, ¶ 56.)

14.    The Complaint does not describe the allegedly unauthorized services with particularity, or identify the specific "unauthorized" charges about which Plaintiff complains. According to the Complaint, however, "the amount Alltel is taking [for unauthorized products and services] is small on an individual basis – as little as a few dollars to at most several hundreds of dollars per person."  (Complaint, ¶ 28 (emphasis added).)

15.     According to Alltel's records, from August 14, 2006, through March 14, 2008, it has charged the account which includes Plaintiff's Alltel cellular telephone number an aggregate amount of at least $350 for premium text message services and other mobile content provided by third parties.

16.     Alltel has provided billing and collections services in connection with its customers premium text message services and other mobile content provided by third parties since July 2005.

17.     Since July 2005, Alltel has billed in excess of 100 cellular customers for premium text message services and other mobile content provided by third parties.

18.     According to Alltel's records, in both 2006 and 2007, it billed its cellular customers in excess of $5,000,000 each year for charges for premium text message services and other mobile content provided by third parties.

19.     According to Alltel's records, during the first three months of 2008, it billed its cellular customers in excess of $5,000,000 for charges for premium text message services and other mobile content provided by third parties.

20.     According to Alltel's records, Alltel has contracted with m-Qube (the only aggregator identified in the Complaint) to provide billing and collection services in connection with premium text message services and other mobile content offered by third parties.

21.     According to Alltel's records, since July 2005, it has billed its cellular customers in excess of $5,000,000 for charges for premium text message services and other mobile content on behalf of m-Qube.

22.     Thus, while Alltel Corporation does not admit that it is liable to Plaintiff or the members of the putative class, the potential amount put into controversy by Plaintiff's Complaint

is in excess of $5,000,000.  See Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448-49

(7th Cir. 2005) (amount in controversy requirement satisfied when defendant, without admitting

liability, alleged facts as to the number of facsimile transmissions which potentially violated the

law which, when multiplied by the potential statutory damages for each violation, demonstrated

"a reasonable probability that that the stakes exceed the minimum" jurisdictional amount).

23.    Accordingly, this action may be removed by Alltel Corporation under 28 U.S.C.

§§ 1441(a), 1453 because is it a class action and the parties have the requisite diversity of

citizenship.

24.    This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it has been

filed within thirty (30) days of Alltel Corporation's receipt of the initial pleading setting forth

Plaintiff's claim for relief upon which this action is based.

25.    Pursuant to 28 U.S.C. § 1446(a), Alltel Corporation has attached to this Notice of

Removal copies of all process, pleadings, and orders served upon or filed by it, the removing

Defendant in this action.  (See Complaint, attached hereto as Exhibit 1.)

26.    By filing this Notice of Removal, Alltel Corporation does not waive any defenses

to the claims asserted by Plaintiff which may be available to it, or concede that Plaintiff has

stated any claim upon which relief can be granted.

27.    Alltel Corporation further represents that this Notice of Removal will be served

on Plaintiff's counsel as indicated on the attached Certificate of Service.

28.    A copy of this Notice of Removal will be filed with the Circuit Court of Cook

County, Illinois.

Date: April 14, 2008                              Respectfully submitted,

                                                  **ALLTEL CORPORATION**


                                          By:     s/ Albert E. Hartmann
                                                  One of Its Attorneys


Michael O'Neil (ARDC #06201736)
Albert E. Hartmann (ARDC #06256064)
Sharon R. Albrecht (ARDC #06288927)
**DLA PIPER US LLP**
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
312-368-4000
Email: michael.oneil@dlapiper.com
Email: albert.hartmann@dlapiper.com
Email: shari.albrecht@dlapiper.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Albert E. Hartmann, an attorney, depose and state that on April 14, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I also caused a true and correct copy of the foregoing to be served on the following counsel at the indicated address by First Class United States Mail:

Jay Edelson
Myles McGuire
Steven Lezell
KamberEdelson, LLC
53 West Jackson Boulevard
Suite 1530
Chicago, IL 60604

s/ Albert E. Hartmann
Albert E. Hartmann

08 CV 2097
JUDGE MORAN
MAGISTRATE JUDGE BROWN

# Exhibit 1

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

KEVIN PANTER, individually and on behalf   )
of a class of similarly situated individuals,   )
  )
  Plaintiff,   )   No.
  )
  v.   )   **08CH09729**
  )
ALLTEL CORPORATION d/b/a ALLTEL   )
WIRELESS, a Delaware corporation.   )
  )
  )
  Defendant.   )   **Jury Trial Demanded**
-------------------------------------------------------------x

## CLASS ACTION COMPLAINT

Plaintiff Kevin Panter brings this class action complaint against Defendant Alltel Corporation d/b/a Alltel Wireless ("Alltel") seeking to stop Defendant's unlawful practice of charging cellular telephone customers for products and services the customers have not authorized, a practice which has resulted in Defendant unlawfully collecting money from consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1.   Plaintiff Kevin Panter is a citizen of Illinois.

2.   Defendant Alltel Corporation d/b/a Alltel Wireless ("Alltel") is a leading provider of cellular telephone service in the United States. Alltel is a Delaware corporation with its

headquarters and principal place of business in the State of Arkansas. Alltel does business and has offices throughout the nation.

## VENUE

3.    Venue is proper in Cook County because Defendant does business in Cook County.

## CONDUCT COMPLAINED OF

4.    This case arises from two closely related phenomena. The first is the capability of most cellular telephones, not only to make and receive telephone calls, but also to send and receive text messages, including -- most significantly for present purposes -- "premium" text message services. These services, also known as "mobile content" include products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities (such as direct payment services, interactive radio and participatory television).

5.    The second underlying phenomenon of this case constitutes its very core. That is, just as providers of premium mobile content deliver their products by means of cell phone technology, they likewise charge and collect from their customers by "piggybacking" on the cell phone bills sent out by the wireless carriers, such as Alltel. Further, because the mobile content providers by themselves most often lack the wherewithal to negotiate the necessary relationships with the much larger wireless carriers, they do so with the help of third-party companies, such as m-Qube, known as aggregators. These aggregators act as middle-men, representing numerous mobile content providers in arriving at the agreements that allow them to use the billing and collection mechanisms of the wireless carriers. In turn, both the aggregators and the wireless

carriers are compensated for their services to the mobile content providers by retaining a substantial percentage of the amount each premium mobile content transaction.

6.     The rapid and largely unplanned growth of the premium mobile content industry has led both to the above-described structure and to a disastrous flaw within it. That flaw -- understood, perpetuated, and even encouraged by carriers, aggregators, and mobile content providers such as the instant Defendant -- is an open secret within the industry, but little understood outside of it. In short, the billing and collection systems established by companies including Defendant in aid of the premium mobile content industry that enriches them are conspicuously free of any checks or safeguards to prevent erroneous and unauthorized charges from being added to customers' bills.

7.     As Defendant also knows, significant amounts of money have been collected on account of such unauthorized charges for premium mobile content in the industry over the last few years. And while it has always been within the power of companies such as Defendant to institute simple and effective measures that would prevent this, they have instead knowingly maintained the very system that has allowed these erroneous charges. Indeed Defendant has reaped and retained its shares of the improper collections.

8.     While the total sales of premium mobile content in 2007 amount to a significant sum, the business is still in its infancy. The burgeoning industry has already expanded from ordinary ringtones into mass media-related products such as interactive radio and participatory voting at television and concert events and, most recently, into services that enable cell phones to function as credit cards. Unchecked, Defendant's practices will injure an ever-increasing number of unwitting consumers.

3

9.     Unlike transactions made using checks and credit cards, which require a signature or a highly private sixteen-digit credit card number, the only thing a mobile content provider needs to charge a consumer for its products is the consumer's cellular telephone number. Once a mobile content provider has a consumer's cell phone number, it can cause that consumer to be billed for services and products irrespective of whether the consumer actually agreed to purchase them.

10.     Armed with only a cell phone number, the mobile content provider such as Ringaza can simply provide that number, along with an amount to be charged, to a billing aggregator (such as m-Qube). The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the bill associated with that cell phone number. The charge will then appear on the consumer's cell phone bill, often with only minimal, cryptic identifying information.

11.     Because the protections normally present in consumer transactions -- such as signatures and private credit card numbers -- are absent from this process, the likelihood of false charges increases enormously. And because a substantial part of mobile content "sales" are effected through web sites using misleading, oblique, or inadequately explained "consent" procedures, that likelihood increases by another order of magnitude. Mobile content providers have powerful financial incentives to collect as many cell phone numbers as possible but little incentive to ensure that the owners of those numbers have truly agreed to purchase their goods and services.

12.     In order to tap into the emerging wireless content marketplace and make content services available to wireless consumers, content providers must first obtain access to wireless carriers' mobile communications networks and frequently do so by "partnering" with aggregators -- intermediary companies such as VeriSign and m-Qube that offer content providers

4

(its "content provider partners") direct access to the carriers through existing relationships. This allows content providers to focus on developing and marketing branded content, applications and programs while aggregators manage the complex carrier relationships, distribution, billing and customer service.

13.    Aggregators operate mobile transaction networks that help companies develop, deliver, and bill for mobile content services to compatible mobile devices throughout the State of Illinois and the nation.

14.    By using their end-to-end technology platforms, their relationships with U.S. carriers, and other value-added services, these aggregators have forged a crucial link between the wireless carriers and the mobile content providers. They have enabled the transformation of wireless into a marketing, content delivery, and collections process, while carving out a profitable role for themselves as very critical middlemen in this rapidly growing industry.

15.    Aggregators have developed a vast distribution system that integrates into the wireless networks of some of the largest wireless carriers nationwide, providing direct connections to more than 500 mobile operators, including Alltel, Cellular One, Sprint Nextel, Alltel, US Cellular, among many others.

16.    While aggregators such as m-Qube charge their content provider customers some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill cell phone subscribers: each time a charge is incurred in connection with the purchase of mobile content services offered by a content provider, the aggregator and/or the content provider cause said charge to be billed directly on the cellular telephone bill of the carrier's customer who currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

17.    The carrier then bills and collects the charge from its current subscriber, retains about a portion of the proceeds as its "revenue share" and then remits the balance to the aggregator who has direct access to its network, e.g., m-Qube, who retains a percentage of the balance in the form of its own "revenue share," and then remits the remainder directly to the mobile content provider (or, in some instances, to another aggregator who then retains a percentage of the balance in the form of its own "revenue share" and then remits the balance to its mobile content provider client).

18.    Defendant has in Illinois and the nation registered numerous transactions and processed significant amounts of money in transactions over recent years and have profited greatly from its arrangement with its aggregator partners and content provider partners.

19.    As it also knows, Alltel routinely process charges for mobile content that have not been authorized by the charged party.

### The Carrier's Role In the Scheme to Defraud

20.    Alltel uses uniform form contracts ("Service Agreements") under which customers purchase cell phone services.

21.    As described above, Alltel's services include providing access to and billing for various third-party mobile content services such as ring tones, chat services, horoscopes, stock tips, weather alerts, participatory television, mobile payment services and other forms of software provided by hundreds of third-party vendors with names such as Ringaza and many others.

22.    Alltel has contracted with third-party providers such as m-Qube to bill and collect from Alltel's customers the services provided by third-party content providers such as Ringaza, the charges for which are included directly on a customer's monthly wireless bill.

6

23.    The duty of good faith and fair dealing, a part of every contract, requires that Alltel not bill any customer for any good or service not authorized by the customer.

24.    Upon execution of said Service Agreements and activation of cellular telephone accounts, Alltel provides its customers a ten-digit cellular telephone number.

25.    As explained above, unbeknownst to its customers, Alltel frequently charges consumers for services that were never authorized.

26.    As a result, Alltel has for years been systematically, repeatedly and without authorization, billing its customers for purchase of products and services not agreed to by those customers.  Alltel and third-party service providers have, on information and belief, profited significantly through this practice.

27.    Alltel's conduct is by no means accidental. As previously alleged, it knows that many of its cellular telephone customers dispute the claim the mobile content provider's claim that such customer consented to be charged for their mobile content services. Alltel further knows that it cannot authenticate such customer's authority to be billed for such mobile content charges. In light of its knowledge of these facts, Alltel's decision to continue to charge its customers for mobile content without taking steps to authenticate the representations of the mobile content providers that the customer's authority to be charged was obtained constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

28.    Because the amount Alltel is taking is small on an individual basis – as little as a few dollars to at most several hundreds of dollars per person -- and because of Alltel's vast resources and superior bargaining power, Defendant employ this scheme with the hope and expectation that its illegal conduct will go unpunished.

## THE FACTS RELATING TO THE NAMED PLAINTIFF

29.    In or about 2003, Plaintiff purchased new cell phone service for his family's personal use from an authorized Alltel sales representative.

30.    On that same day, in exchange for an Alltel cellular telephone service plan, Plaintiff agreed to pay Alltel a set monthly fee for a period of 12 months.

31.    Upon activating his cellular telephone account, Alltel provided Plaintiff with a cellular telephone number.

32.    In or about 2007 and continuing periodically thereafter, Plaintiff's cell phone account was charged for unwanted mobile content services in the form of "premium" text messages from Defendant.

33.    At no time did Plaintiff authorize the purchase of these products and services offered by Defendant and at no time did Plaintiff consent to Defendant's sending of text messages to his cellular telephone.

34.    During the relevant time period, Defendant caused Plaintiff to be charged service fees for so-called "Premium" text messages and related content provided by numerous content providers including Media Breakaway LLC d/b/a Ringaza.

35.    At no time did Plaintiff authorize Defendant or anyone else to bill him for these charges.

36.    Defendant have yet to provide Plaintiff a full refund of the unauthorized charges consisting of the premium text message charges, ordinary text messages, data charges, back interest and/or an assurance that such unauthorized charges would not appear in future billing periods.

## CLASS ALLEGATIONS

37.    Plaintiff brings this action on behalf of himself and a Class, defined as follows:

A class "the Class" consisting of all Alltel wireless telephone subscribers in the nation who suffered losses or damages as a result of Alltel billing for mobile content products and services not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the Defendant, and (ii) any employee of Defendant.

38.     The claims of Plaintiff are typical of the claims of all of the other members of the Class.

39.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.  Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

40.     Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

41.     Defendant has acted and failed to act on grounds generally applicable to the plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

42.     The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other

members of the Class. Plaintiff and the other Class members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

43.    There are many questions of law and fact common to the claims of Plaintiff and the other members of the respective Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

      (a)    Whether Alltel's conduct described herein is in breach of contract.

      (b)    Whether Alltel's conduct described herein is consumer fraud.

## COUNT I
### (Breach Of Contract on behalf of the Class)

44.    Plaintiff incorporates by reference the foregoing allegations.

45.    Plaintiff and the Class entered into substantially identical agreements with Defendant Alltel whereby Plaintiff and the Alltel agreed to pay a certain sum of money in exchange for Alltel's activation of Plaintiff and the Alltel's cellular telephone account and its promise to provide various communication and related services to Plaintiff and the Class.

46.    Defendant Alltel expressly and/or impliedly agreed to provide Plaintiff and the Class with a cellular telephone number free of unauthorized charges for third-party products and services.

47.    Defendant Alltel further expressly and/or impliedly agreed to bill Plaintiff and the Class only for products or services the purchase of which they had authorized.

48.    Defendant Alltel further expressly and/or impliedly agreed to carry out its obligations in good faith and fair dealing.

49.     Defendant Alltel breached its contractual obligations by providing Plaintiff and the Class with cellular telephone accounts that included unauthorized charges for mobile content.

50.     Defendant Alltel further breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by thereafter billing Plaintiff and the Class for products or services, the purchase of which they never authorized.

51.     The aforementioned breaches of contract have proximately caused the Plaintiff and the other members of the Class economic injury and other damages.

## COUNT II
### (Consumer Fraud on Behalf of the Class)

52.     Plaintiff incorporates by reference the foregoing allegations.

53.     Defendant engaged in unfair methods of competition and unfair and deceptive practices, including false promise and misrepresentation of material facts in the conduct of its provision of wireless telephone service.

54.     Defendant violated, and continues to violate the proscription against such conduct, as set forth above.

55.     Defendant intended that Plaintiff and the members of the proposed Class rely on its deceptive conduct and they did so rely, thus proximately resulting in damages.

56.     Defendant, through its acts of unfair competition, has obtained money from Plaintiff and members of the proposed Class.  Plaintiff and the members of the Class ask that this Court restore this money to Plaintiff and enjoin Defendant from continuing its illegal practices.

57.     Such conduct is ongoing and continues to this date.  Plaintiff, the Class members and the general public are therefore entitled to the relief described herein.

WHEREFORE, Plaintiff Kevin Panter, on behalf of himself and the Class, prays for the following relief:

a.  Certify this case as a class action on behalf of the Class as defined above and appoint Kevin Panter Class Representative, and appoint the undersigned as lead counsel;

b.  Declare that the actions of Alltel, as set out above, constitutes a breach of contract and consumer fraud;

c.  Enter judgment against Alltel for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct, and if its conduct is proved willful, award Plaintiff and the Class exemplary damages;

d.  Award Plaintiff and the Class reasonable costs and attorneys' fees;

e.  Award Plaintiff and the Class pre- and post-judgment interest;

f.  Enter judgment for injunctive, statutory and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

g.  Award such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

March 13, 2008

Kevin Panter, individually and on behalf of a class of similarly situated individuals

_____
One of his attorneys

Jay Edelson
Myles McGuire
Steven Lezell
KAMBEREDELSON, LLC
53 West Jackson Boulevard
Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370
Firm ID: 44146

08 CV 2097
JUDGE MORAN
MAGISTRATE JUDGE BROWN

# Exhibit 2

| | | |
|---|---|---|
| 2120 – Served | 2121    Served | |
| 2220 – Not Served | 2221 – Not Served | |
| 2320 – Served By Mail | 2321 – Served By Mail | |
| 2420 – Served By Publication | 2421 – Served By Publication | |
| **SUMMONS** | **ALIAS - SUMMONS** | **CCG N001-10M-1-07-05 (              )** |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, <u>CHANCERY</u> DIVISION

(Name all parties)

Panter, Kevin

v.

Alltel Corporation

}

**08CH09729**

No. _____

## SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑  **Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602**

| ☐ **District 2 - Skokie** <br> 5600 Old Orchard Rd. <br> Skokie, IL 60077 | ☐ **District 3 - Rolling Meadows** <br> 2121 Euclid <br> Rolling Meadows, IL 60008 | ☐ **District 4 - Maywood** <br> 1500 Maybrook Ave. <br> Maywood, IL 60153 |
|---|---|---|
| ☐ **District 5 - Bridgeview** <br> 10220 S. 76th Ave. <br> Bridgeview, IL 60455 | ☐ **District 6 - Markham** <br> 16501 S. Kedzie Pkwy. <br> Markham, IL 60426 | ☐ **Child Support** <br> 28 North Clark St., Room 200 <br> Chicago, Illinois 60602 |

**You must file within 30 days after service of this Summons, not counting the day of service.**
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 44146

Name: Myles McGuire

Atty. for: Plaintiff

Address: 53 West Jackson Boulevard, Ste. 1530

City/State/Zip: Chicago, Illinois 60604

Telephone: (312) 589-6370

Service by Facsimile Transmission will be accepted at: _____

WITNESS,_____ MAR 1 3 2008

DOROTHY BROWN
CLERK OF CIRCUIT COURT

_____
**Clerk of Court**

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**Service of Process Transmittal**
03/14/2008
CT Log Number 513195937

**TO:** ▮▮▮▮▮▮▮▮▮▮▮▮
Alltel Corporate Services, Inc.
One Allied Drive, One Allied Drive
Bldg B1, Floor 6
Little Rock, AR 72202

**RE:** **Process Served in Delaware**

**FOR:** ALLTEL CORPORATION (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Kevin Panter, individually and on behalf of a class of similarly situated individuals, Pltf. vs. Alltel Corporation, etc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | Cook County: Chancery Court, IL Case # 08CH09729 |
| **NATURE OF ACTION:** | Class Action - The defendant wrongfully charged cellular phone customers for products and services that were not authorized which has resulted in defendant unlawfully collecting money from consumers. Seeking injunctive, statutory and declaratory relief. |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/14/2008 at 11:50 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service of summons, not counting day of service |
| **ATTORNEY(S) / SENDER(S):** | Myles McGuire KamberEdelson, LLC 53 West Jackson Blvd. Ste. 1530 Chicago, IL 60604 312-589-6370 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| **SIGNED:** | The Corporation Trust Company |
| **PER:** | Scott LaScala |
| **ADDRESS:** | 1209 Orange Street Wilmington, DE 19801 |
| **TELEPHONE:** | 302-658-7581 |

Page 1 of 1 / AC

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.