IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN PANTER, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>ALLTEL CORPORATION<br>d/b/a ALLTEL WIRELESS,<br><br>Defendant. | Civil Action No. 08 CV 2097<br><br>Judge Moran<br><br>Magistrate Judge Brown |

## DEFENDANT ALLTEL CORPORATION'S
## RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendant Alltel Corporation ("Alltel"), by its attorneys, hereby submits its Response in Opposition to Plaintiff's Motion to Remand.

Alltel properly removed this action and its Notice of Removal, now supported by an affidavit submitted herein, demonstrates that the allegations of Plaintiff's Complaint establish this Court's original jurisdiction under the Class Action Fairness Act and, in particular, its $5 million amount-in-controversy requirement.[1] Plaintiff has not presented or pointed to any evidence or allegations that would establish otherwise. Given Plaintiff's allegations that "systematic" mis-billing by Alltel of third-party mobile phone content was part of a "deliberate" scheme to defraud, and the recovery he seeks on behalf of a nationwide class, Alltel's "good faith estimate" that a mere                of those charges are at issue is "plausible," and therefore sufficient to establish the requisite amount in controversy. Moreover, Plaintiff's prayers for punitive damages and injunctive relief – ignored in the Motion to Remand – further support satisfaction of the amount-in-controversy requirement. Therefore, this Court should deny Plaintiff's Motion to Remand.

---

[1] Alltel respectfully notes that certain portions of the Affidavit of Susan Marion have been filed under seal pursuant to the Stipulated Protective Order entered in this action and Local Rules 5.8 and 26.2. The portions of the Affidavit describing total amounts billed to customers for certain services are proprietary information of Alltel, a privately-held company. Alltel respectfully requests that the Court not disclose this information in any publicly-available ruling on the Motion to Remand.

I.  **FACTUAL BACKGROUND**

   A.  **Complaint And Removal.**

Plaintiff filed his Class Action Complaint ("Complaint," Docket No. 1 Ex. 1) with the Circuit Court of Cook County, Illinois, on or about March 13, 2008. The Complaint asserts claims for "Breach of Contract on behalf of the Class" and for "Consumer Fraud on behalf of the Class." Alltel received service of the Complaint on March 14, 2008. On April 14, 2008, Alltel timely filed its Notice of Removal (Docket No. 1), on the basis that this Court has original jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because it is a class action involving more than 100 putative class members where the amount in controversy exceeds $5 million and Plaintiff and Alltel have the requisite diversity of citizenship. Plaintiff filed his Motion to Remand (the "Motion") based on the sole argument that Alltel has not demonstrated[2] that the amount in controversy exceeds $5 million and therefore the Court purportedly does not have jurisdiction under 28 U.S.C. § 1332(d). Plaintiff's Motion does not contest any jurisdictional requirements other than the amount-in-controversy requirement.

   B.  **Alltel's Alleged Conduct With Respect To The Nationwide Putative Class.**

Plaintiff alleges that defendant Alltel provides cellular telephone services to subscribers nationwide. (Compl. ¶ 2.)[3] Plaintiff's Complaint focuses on "premium" text message services, also described as "mobile content," that are available to customers who allegedly receive cellular telephone service from Alltel. (Id. ¶ 4.) Plaintiff alleges that the providers of mobile content "partner" with third-party companies known as aggregators to use the billing and collection mechanisms of cellular carriers to bill customers for the mobile content. (Id. ¶¶ 5, 10, 12-17.)

---

[2] Notably, Plaintiff is careful not to disavow seeking more than $5 million by his putative class action lawsuit. Nor does Plaintiff even suggest that his Complaint can be read as seeking less than $5 million on behalf of the putative nationwide class. This is not surprising, as any voluntary cap assumed by Plaintiffs' attorneys would raise questions as to their adequacy. See G.M. Sign, Inc. v. Franklin Bank, S.S.B., No. 06 C 949, 2007 WL 4365359, at *2 (N.D. Ill. Dec. 13, 2007) (Plaintiff's disavowal of class damages greater than $5 million "is a matter of some concern" and "raises questions as to the ability of the current plaintiff to adequately represent the interests of the class as a whole."). In any event, such post-removal conduct is irrelevant to determining whether jurisdiction existed at the time of removal. See In re Shell Oil Co., 970 F.2d 355, 356 (7th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283 (1938)) (post-removal stipulations by plaintiff irrelevant).

[3] As noted in the Notice of Removal (¶ 2), defendant Alltel Corporation is the parent company of Alltel Communications, LLC. Alltel Communications, but not defendant Alltel Corporation, provides cellular telephone services to subscribers nationwide.

Plaintiff alleges that Alltel bills customers directly for charges for third-party mobile content. (Id. ¶ 17.)

Plaintiff alleges that, in breach of its contracts with Plaintiff and with other Alltel wireless telephone subscribers, and as part of "a deliberate and willful scheme to cheat large numbers of people," Alltel charges cellular customers for unauthorized premium text message services and other mobile content. (Id. ¶ 27; see also id. ¶¶ 7, 18-19, 20-26, 28.) Plaintiff alleges that Alltel's "billing and collection systems . . . are conspicuously free of any checks or safeguards to prevent erroneous and unauthorized charges from being added to customers' bills." (Id. ¶ 6.) Plaintiff alleges that Alltel knows that this conduct is "by no means accidental," but that Alltel nevertheless has "deci[ded] to continue to charge its customers for mobile content without taking steps to authenticate the representations of the mobile content providers." (Id. ¶ 27.) Notably, the Complaint does not describe any allegedly unauthorized services with particularity or identify the specific "unauthorized" charges about which Plaintiff complains. Instead, Plaintiff alleges that Alltel's practice of passing along unauthorized charges is widespread, and that Alltel "routinely," "frequently," "systematically, [and] repeatedly" charges customers for premium text message services and other mobile content that the customers have not authorized. (Id. ¶¶ 19, 25, 26.) Plaintiff alleges that, given the flawed process of authorizing the purchase of premium text message services and other mobile content, and the deceptive marketing of such services, "the likelihood of false charges increases enormously." (Id. ¶ 11.)

Plaintiff brings these claims not only on his own behalf but on behalf of the "large numbers of people" who are allegedly affected by these allegedly harmful practices. (Id. ¶ 27.) Plaintiff defines the putative class as "all Alltel wireless telephone subscribers in the nation" who were billed for unauthorized charges. (Id. ¶ 37.) Plaintiff does not limit the class to unauthorized charges for any particular time period. (Id.) Plaintiff alleges that a large amount of money is at stake in this litigation. Plaintiff alleges that Alltel has "processed significant amounts of money," and "profited greatly" and "significantly." (Id. ¶¶ 18, 26.) Plaintiff alleges that the "amount Alltel is taking" ranges from "as little as a few dollars to at most several hundreds of dollars per person." (Id. ¶ 28.)

    C.    **Alltel's Records As To The Charges At Issue.**

The records of Alltel's subsidiary Alltel Communications, LLC, identify the amounts of the charges put at issue by Plaintiff's Complaint. Between July 2005, when Alltel

3

Communications first began providing billing and collections services in connection with third-party mobile content, and March 2008 (inclusive), Alltel Communications billed its subscribers ▓▓▓▓▓ for charges for premium text message services and other third-party mobile content. (See Affidavit of Susan Marion ¶ 6, attached hereto as Exhibit A ("Marion Aff.").) Those charges break down by year as follows:

| Year | Amount Billed |
|---|---|
| REDACTED | |

(Id.) If Plaintiff' Complaint is read to suggest that only ▓▓▓ t of these charges are unauthorized, the amount in controversy would be ▓▓▓ or in excess of $5 million.

The only third-party aggregator identified in the Complaint is m-Qube.[4] (Compl. ¶¶ 5, 10, 12.) According to the records of Alltel Communications, it has billed its subscribers between July 2005 and March 2008 (inclusive) a total of ▓▓▓ on behalf of m-Qube for premium text message services and other third-party mobile content. (Marion Aff. ¶ 8.) Those charges, which are more than ▓▓▓ of the total charges described above, break down by year as follows:

| Year | Amount Billed |
|---|---|
| REDACTED | |

(Id.) If Plaintiff's Complaint is read to suggest that only ▓▓▓ of these m-Qube charges are unauthorized, the amount in controversy would be ▓▓▓ or in excess of $5 million.

**D.   Alltel's Records As To Plaintiff's Charges.**

Plaintiff alleges that the amounts that Alltel has taken from each member of the putative nationwide class ranges up to "several hundreds of dollars per person." (Compl. ¶ 28.) The records of Alltel Communications regarding the account associated with Plaintiff also suggest

---

[4] Plaintiff also refers to VeriSign, but m-Qube is a VeriSign company.

4

REDACTED REDACTED REDACTED REDACTED

that at least some portion of the putative class members have claims of "several hundreds of dollars."

Plaintiff alleges that he purchased a mobile telephone account from Alltel and that, "[i]n or about 2007 and continuing periodically thereafter, Plaintiff's cell phone account was charged for unwanted mobile content services in the form of 'premium' text messages from Defendant." (Compl. ¶ 32.) He also alleges that Alltel "caused Plaintiff to be charged service fees for so-called 'Premium' text messages and related content provided by numerous content providers." (Id. ¶ 34.) Plaintiff alleges that "[a]t no time did [he] authorize Defendant or anyone else to bill him for these charges." (Id. ¶ 35.) Records show that, from August 14, 2006, to March 14, 2008, Alltel Communications charged to the account that includes Plaintiff's Alltel cellular telephone number         for premium text message services and other third-party mobile content. (Alltel separately credited       in such charges to that account.) (Marion Aff. ¶ 9.) The amount credited represents approximately 33 percent of the total amount billed for the content and services

### E. Plaintiff's Requested Relief.

Plaintiff alleges that Alltel has "yet to provide Plaintiff a full refund of the unauthorized charges . . . and/or an assurance that such unauthorized charges would not appear in future billing periods." (Compl. ¶ 36.) Plaintiff requests that the Court "restore" money that Alltel "has obtained . . . from Plaintiff and members of the proposed Class" and "enjoin Defendant from continuing its illegal practices." (Id. ¶ 56.) In addition to injunctive relief, Plaintiff requests compensatory and punitive damages, "reasonable costs and attorneys' fees", and "pre- and post-judgment interest." (Id. ¶¶ 12 c-f.)

## II. ARGUMENT

### A. A Plausible Estimate Of The Amount In Controversy Derived From Plaintiff's Allegation, And Defendant's Records Suffice.

Courts evaluate removal under the Class Action Fairness Act (CAFA) using the same burdens and standards as for removal on any other basis. Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 447-48 (7th Cir. 2005) (allocating burden of persuasion to proponent of jurisdiction); Kessler v. Am. Resorts International's Holiday Network, Ltd., No. 05 C 5944, 2007 WL 4105204, at *10 (N.D. Ill. Nov. 14, 2007) (The rule for establishing the amount-in-controversy requirement is the same under CAFA as in ordinary diversity-of-citizenship cases.).

Where, as here, the plaintiff "provides little information about the value of [its] claims," Oshana v. Coca-Cola Co., 472 F.3d 506, 511 (7th Cir. 2006), Alltel need only show by a preponderance of the evidence facts which "suggest" the amount-in-controversy requirement is met. In that case, "a good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." Id. (emphasis added). Moreover, under well-established U.S. Supreme Court case law, once a defendant provides such a good-faith estimate, "the proponent's estimate of the claim's value must be accepted unless there is legal certainty that the controversy's value is below the threshold." Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 541 (7th Cir. 2006) (quotation omitted); see also Brill, 427 F.3d at 448.

The Seventh Circuit has instructed, and courts in this District have accepted, that the $5 million amount-in-controversy requirement under CAFA can be reasonably estimated by comparing a complaint's allegations with defendant's records regarding the alleged conduct. Particularly relevant is Brill v. Countrywide Home Loans, Inc., where the Seventh Circuit reversed the district court's order to remand the class action to state court. In Brill, the plaintiff alleged that the defendant had sent faxes that violated the Telephone Consumer Protection Act, which provides for recovery of $500 in statutory damages per fax, a sum that may be the trebled if defendant willfully violated the statute. 427 F.3d at 447. In opposing the remand motion, the defendant admitted that its employee had sent at least 3,800 advertising faxes and calculated that, if trebling was presumed, at least $5,700,000 was therefore in controversy. Id. at 449. The Brill Court held that this combination of the plaintiff's allegations and information from the defendant's records as to the number of potentially offending acts was sufficient to the amount in controversy required by 28 U.S.C. § 1332(d)(2). Id.

In another decision reversing the remand of a putative class action under CAFA, the Seventh Circuit in Home Depot v. Rickher, No. 06-8006, 2006 WL 1727749 (7th Cir. May 22, 2006), relied upon similar allegations and evidence to calculate the requisite amount in controversy. There, as here, the defendant offered an affidavit, derived from defendant's records, to set forth revenues derived from the conduct at issue. Id. at *1-2. Also instructive is Kaufman v. American Express Travel Related Services Co., No. 07 C 1707, 2008 WL 687224 (N.D. Ill. March 7, 2008), where, as here, plaintiff asserted claims for breach of contract and fraud on behalf of a nationwide class of consumers. At issue were allegedly undisclosed restrictions on use of an American Express gift card. In connection with defendant's removal of

the action to federal court, American Express offered an affidavit which described the revenues derived from the sale of the gift cards. On these facts the court found that it had subject-matter jurisdiction under CAFA. Id. at *2.

Other common-sense methods for estimating the amount put at issue by putative class actions have been used. In Espinosa v. Philip Morris USA, Inc., No. 07 C 231, 2007 WL 917383, at *2 (N.D. Ill. Mar. 26, 2007), for example, the court denied a motion to remand and found the jurisdictional amount under CAFA met after multiplying the value of the plaintiff's individual claim by the minimum number of class members. Courts have recognized that the inferences that can be drawn from plaintiff's allegations must be accepted, regardless of their ultimate merit. See, e.g., Kessler v. Am. Resorts Int'l Holiday Network, Ltd., No. 05 C 5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) (CAFA $5 million threshold was met by a single damages theory of plaintiff, even though the court had expressed doubt that plaintiff would succeed on the theory).[5]

Plaintiff cites Meridian, 441 F.3d 536, for the idea that Alltel must prove "contested factual assertions" to establish jurisdiction, and that it has failed to do so. However, in this case, no factual assertions are contested, and those offered in the Notice of Removal are fully supported by affidavit. (See Marion Aff.) Plaintiff does not argue that any of the facts offered by Alltel are incorrect; rather, he contends that Alltel has not provided sufficient information to arrive at the conclusion that jurisdiction is proper. Meridian makes clear that a removing defendant need only offer evidence to support the factual assertions upon which the legal conclusion of jurisdiction can be made. 441 F.3d at 540-41 ("What the proponent of jurisdiction must 'prove' is contested factual assertions . . . . Jurisdiction itself is a legal conclusion.") Citing Brill, the Seventh Circuit in Meridian expressly stated that "calculation from the complaint's allegations" suffices to establish an estimated amount-in-controversy, and that "the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum." Id. at 542. See also Home Depot, 2006 WL 1727740, at *1-2; Kaufman, 2008 WL 687224, at *2; Espinosa, 2007 WL 917383, at *2.

---

[5] "The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties." Brill, 427 F.3d at 448 (emphasis added). "The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks." Id. at 449.

7

### B. Alltel Has Offered A Good Faith, Plausible Estimate That The Amount In Controversy Exceeds $5 Million.

Plaintiff seeks to represent a nationwide class of millions of consumers, and seeks the repayment of tens of millions of dollars paid by the putative class for unauthorized premium text message services and other mobile content in issue. Although Plaintiff does not specifically allege either the number of consumers that would be included in the class or the total dollar amount sought, the allegations of the Complaint, when compared to the corresponding charges and other information from Alltel Communications' records, make clear that Plaintiff is seeking far more than $5 million in class-wide compensatory damages. Moreover, although not addressed by Plaintiff's Motion, his prayer for punitive damages and injunctive relief further demonstrate that the amount in controversy is well in excess of $5 million.

#### 1. Plaintiff seeks well in excess of $5 million in compensatory damages.

Records show that Alltel Communications has billed its subscribers more than [REDACTED] million for premium text message services and other third-party mobile content since July 2005. The required $5 million amount in controversy is just [REDACTED] of that total. Thus, even if the Court focuses only on Plaintiff's prayer for actual damages to determine the amount in controversy, the Court need only determine that Plaintiff's allegations, and Alltel's records, support a good faith estimate that at least [REDACTED] of these charges are put at issue here.

Plaintiff's Complaint clearly renders "plausible" the estimate that unauthorized charges for premium text message services and other third-party mobile content may amount to [REDACTED] of all such charges. The Complaint alleges that Alltel "routinely," "frequently," "systematically, [and] repeatedly" processes unauthorized charges. (Compl. ¶¶ 19, 25, 26.) Plaintiff alleges that the "likelihood of false charges increases enormously" and then "increases by another order of magnitude" because of the way charges are incurred. (Id. ¶ 11.) He alleges that Alltel and wireless carriers have collected "significant amount of money" and "profited greatly," as much as "several hundreds of dollars per person" from "large numbers of people." (Id. ¶¶ 7, 18, 27, 28.) Such strong language alleges widespread conduct, not a small percentage of Alltel's alleged billings.

Plaintiff's Motion mischaracterizes the breadth of the Complaint's allegations. The Motion (at 3) states that the Complaint does not "claim that all of Alltel's mobile content charges were illegal and should be returned." However, the focus here is not on what the Complaint does

not allege, but rather on what the allegations are. As an initial matter, it is clear that Plaintiff alleges that the unauthorized charges are not anecdotal, and are "by no means accidental." Rather, Plaintiff attacks Alltel's "billing and collection systems" as a whole, and describes alleged fundamental flaws which raises questions as to all charges, and which constitute "a deliberate and willful scheme to cheat large numbers of people." (Compl. ¶¶ 6, 27; see also id. ¶¶ 7, 18-19, 20-26, 28.) Moreover, the only allegations in the Complaint regarding the scope of this massive scheme to defraud – allegations not addressed in the Motion – clearly allege that all charges that appeared on the bill that included Plaintiff's telephone were unauthorized. (Id. ¶¶ 32-35.)

Based upon the uncontested facts and allegations of routine and systematic mis-billing by Alltel that placed unauthorized charges on Plaintiff's bill, if only [REDACTED] of the Alltel charges at issue were unauthorized, the $5 million amount-in-controversy requirement would be met. If only [REDACTED] of the charges associated with the only third-party aggregator identified in the Complaint as a source of unauthorized charges proved to be unauthorized, that fact alone would establish the $5 million requirement. Therefore, Alltel has provided an unrebutted "good-faith estimate of the stakes" that is "plausible and supported by a preponderance of the evidence," Oshana, 472 F.3d at 511.[6]

    2.    <u>Plaintiff's request for punitive damages must also be considered</u>.

Plaintiff's request for punitive damages further enlarges the amount in controversy. (Compl. ¶ 12 c.) Courts must consider a request for punitive damages in the jurisdictional

---

[6] The April 29, 2008, decision in Paluzzi v. Cellco Partnership, No. 08 C 0405 (N.D. Ill. April 29, 2008), does not compel a different result. There, the putative class plaintiff, who is represented by the same plaintiff's lawyers here, sued defendants for claims based on facts similar to those alleged here. Unlike Alltel here, defendants in Paluzzi argued that, because plaintiff attacked defendants' entire billing system, all charges were at issue. The court rejected this argument in granting remand. Moreover, the actual claims in Paluzzi are much smaller than those alleged in this action. There, the plaintiff brought claims only on behalf of an Illinois class that had been billed $13 million for third-party content. The court found that Verizon had submitted insufficient information to support the estimate that 38% of the total amount billed by Verizon were at issue. Here, the Court need only determine that less than [REDACTED] the billings at issue may have been unauthorized. In any event, to the extent that the Paluzzi court relied upon a district court ruling to remand because a husband's loss of consortium claim could not be aggregated with the wife's claims arising from an auto accident, and because defendant offered no support for the amount in controversy, see Reason v. Gen. Motors Co., 896 F.Supp. 829 (S.D. Ind. 1995), that ruling (like Reason) is inapposite. Unlike in Reason, and Paluzzi, here there is a more than sufficient basis to estimate that at least [REDACTED] Alltel's charges are put at issue.

analysis. See, e.g., Oshana, 472 F.3d at 512. Indeed, in Oshana, the court considered the possibility of an award of punitive damages even though the plaintiff had not even requested them in her complaint. Id. In Brill, the Court calculated the amount in controversy by assuming statutory treble damages for willfulness, because "the complaint [did not] abjure trebled damages" and "held open that possibility, depending on the state of proof." 427 F.3d at 449. Thus, a treble recovery was not "legally impossible." Id.; see also Buller v. Owner Operator Indep. Driver Risk Retention Group, Inc., 461 F. Supp. 2d 757, 761-63 (S.D. Ill. 2006) (compensatory damages flowing from alleged systematic, nationwide scheme of fraud, and constitutionally-permitted award of punitive damages sufficient to establish it is not "legally impossible" that CAFA jurisdictional amount is not met).

Plaintiff requests exemplary damages if Alltel's "conduct is proved willful," and he clearly alleges willfulness. (Compl. ¶ 12 c; see also, e.g., id. ¶ 27.) These allegations and this prayer for relief increase the amount in controversy and further reduce (below ⬛ the ⬛ percent of the $⬛ in Alltel's third-party charges that must be a good faith estimate of the allegedly unauthorized charges for the amount in controversy requirement to be met.

    3.    <u>Plaintiff's request for injunctive relief further escalates the amount in controversy.</u>

The amount in controversy also includes the substantial cost of compliance with the equitable remedy that Plaintiff requests. Home Depot, Inc. v. Rickher, No. 06-8006, 2006 WL 1727749, at *1 (7th Cir. May 22, 2006) (quoting Tropp v. Western-Southern Life Ins. Co., 381 F.3d 591, 595 (7th Cir. 2004)). Plaintiff requests that the Court "enjoin [Alltel] from continuing its illegal practices." (Compl. ¶ 56; see also id. 12 ¶ f.) The cost of complying with an injunction can include the loss of future revenues when a plaintiff requests an injunction forbidding a profitable business practice. For example, the plaintiff in Home Depot challenged the charge for a "damage waiver" that was included in a retail chain's standard contract for equipment rental. The defendant removed the putative class action on the basis of the CAFA provision at issue here, 28 U.S.C. § 1332(d)(2). After the district court granted plaintiff's motion to remand, defendant sought permission to appeal to the Seventh Circuit. The Seventh Circuit granted the petition and reversed the district court's remand order, and found that the amount in controversy exceeded $5 million. Relying upon an affidavit offered by defendant regarding the revenues put at issue by plaintiff's claims, the Seventh Circuit estimated the possible revenue

REDACTED

loss resulting from the grant of injunctive relief. This estimated lost revenue, the court noted, might exceed $5 million over several years. 2006 WL 1727749, at *2.

Similarly, here, Plaintiff seeks to enjoin Alltel's "billing and collection systems" generally, claiming that Alltel "deliberate[ly]" and "systematically" billed class members for unauthorized charges, and took no steps to verify any charges for third-party content. (Compl. ¶¶ 6, 26. 27.) Alltel's charges for premium text message services and other mobile content exceeded            in 2006 and            in 2007. As of March 31, 2008, those charges already totaled over            for the year. Plaintiff describes the growth in these services, and their profitability. (See Compl. ¶¶ 8, 26.) Therefore, separate and apart from the monetary recovery sought by Plaintiff, Plaintiff has easily placed greater than $5 million at issue by requesting that the Court enjoin Alltel's practice of providing billing services to third parties for mobile content. Therefore, CAFA's amount-in-controversy requirement is met.

### C. The Florida District Court Ruling In Gray Is Distinguishable.

The order in Gray v. Cellco Partnership, Case No. 08-60146 (S.D. Fla. Mar. 26, 2008), attached to the Motion as Exhibit A (the "Gray Order"), cannot control this Court's decision, as it is factually distinguishable. The Gray Court makes much of the fact that Gray did not claim that all amounts collected for premium text message services and other mobile content were unauthorized. (See Gray Order at 4.) By contrast, Plaintiff here does not allege that some of the charges were authorized and others were not. Instead, Plaintiff alleges generally that Alltel charged him for third-party content, and that those charges were unauthorized. (Compl. ¶¶ 34-35.) This allegation that all his charges were unauthorized is consistent with Plaintiff's description of the "deliberate" and "systematic" flaws in Alltel's billing system. (See Compl. ¶¶ 26, 27.)

The size of the claims here are also much higher than in Gray. There, the defendant's total charges to the purported class were less than $25 million (Gray Order at 3); here, the total relevant charges by Alltel are in excess of            Gray's class was limited to Florida (Gray Order at 2); Plaintiff seeks to represent a nationwide class. Recovery in Gray was subject to a statutory cap on punitive damages (Gray Order at 3); Plaintiff's complaint here suggests no cap. In Gray, plaintiff's individual claim was for only $19.99 (Gray Order at 4 n.2). Here, although Plaintiff does not quantify the alleged unauthorized charges, Alltel's records indicate that the account associated with Plaintiff's account was billed            for premium text message

11

services and other third-party mobile content. Thus, the amounts at issue in this case are much larger than those in Gray. Therefore, the Gray Order is not instructive here.[7]

### D. Plaintiff Is Not Entitled To An Award Of Fees.

Plaintiff should not recover any fees associated with his Motion. He argues that, if remand is ordered, he should be awarded the costs and fees associated with the Motion pursuant to 28 U.S.C. § 1447(c), because "Alltel lacks an objectively reasonable basis for seeking removal." (Motion 4.) Alltel has established an objectively reasonable basis for removal, and even if this Court disagrees with Alltel's analysis and remands this case, an award of fees is not appropriate. The removal statute allows for fee awards "to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party," not to force litigants to "choose to exercise th[e] right [to remove] only in cases where the right to remove is obvious." Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005). Indeed, courts often refuse to award attorneys fees even after granting a motion to remand. See, e.g., Lott v. Pfizer, Inc., 492 F.3d 789, 793-94 (7th Cir. 2007). Alltel has pointed to significant evidence establishing that federal jurisdiction is proper in this case, and an award of fees would not be warranted in the event of remand.

### III. CONCLUSION

Given the broad-ranging scope of the Complaint, which alleges "systematic" misbilling by Alltel and complains that all of the third-party mobile content charges on Plaintiff's account were unauthorized, and compared to the evidence from Alltel's records regarding total revenues, it is clear that the Complaint puts more than $5 million at issue in this case. In his Motion, Plaintiff ignores several categories of requested relief and urges this Court to follow a Florida district court ruling which is factually distinguishable. Notably, Plaintiff does not argue the amount in controversy is less than $5 million. Alltel has provided the required good-faith, plausible estimate and presented uncontested facts to support that estimate, and Plaintiff has not

---

[7] The Eleventh Circuit cases cited in Gray are similarly distinguishable. In Lowery v. Alabama Power Co., 483 F.3d 1184, 1217-1218 (11th Cir. 2007), the removing defendant relied solely upon the plaintiffs' complaints, and offered no additional evidence to support federal court jurisdiction. In Miedema v. Maytag Corp., 450 F.3d 1322 (11th Cir. 2006), notably, the court accepted the relevance of all allegedly defective ovens sold in the state to claims based upon such ovens, but found the declaration's unexplained conclusion that the "total value" of plaintiff's claims exceeded $5 million insufficient, id. at 1331.

contested any facts or even the ultimate conclusion as to the amount at stake. The $5 million amount-in-controversy requirement is clearly satisfied, and Plaintiff's Motion should be denied.

Date: May 13, 2008                                    Respectfully submitted,

                                                      **ALLTEL CORPORATION**


                                                      By:   s/ Michael O'Neil
                                                            One of Its Attorneys

Michael O'Neil (ARDC #06201736)
Albert E. Hartmann (ARDC #06256064)
Sharon R. Albrecht (ARDC #06288927)
**DLA PIPER US LLP**
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
312-368-4000

## CERTIFICATE OF SERVICE

I, Michael O'Neil, an attorney, depose and state that on **May 13, 2008**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve electronic notice to all counsel of record.

s/ Michael O'Neil
Michael O'Neil

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN PANTER, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 08 CV 2097 |
| ALLTEL CORPORATION d/b/a ALLTEL WIRELESS, | ) ) ) ) | Judge Moran Magistrate Judge Brown |
| Defendant. | ) | |

### AFFIDAVIT OF SUSAN MARION

I, Susan Marion, being first duly sworn, state as follows:

1. I am employed by Alltel Communications, LLC as a Senior Analyst - Marketing. I have worked for Alltel Communications, LLC, or its predecessor entities for eight (8) years. I have held my current position for over two (2) years.

2. If called as a witness, I would competently testify to the facts contained in this affidavit.

3. Defendant Alltel Corporation is the parent company of Alltel Communications, LLC (hereinafter "Alltel"). Alltel, but not Alltel Corporation, provides cellular telephone services to subscribers nationwide.

4. In connection with my job duties for Alltel, I am familiar with how Alltel provides billing services in connection with premium text message services provided to Alltel subscribers by third parties. I am also familiar with Alltel's records reflecting the amounts that it has billed to its subscribers for premium text message services provided by third parties.

5. Alltel has provided billing services in connection with premium text message services provided to Alltel subscribers by third parties since July 2005.

6. In the years 2005 through 2007, and during the first three months of 2008, Alltel billed its subscribers the following amounts for charges for premium text message services provided by third parties:

| Year: | Amount Billed: |
|---|---|
| REDACTED | |

7. Alltel has contracted with m-Qube (a third-party aggregator identified in the Complaint in this matter) to provide billing services in connection with premium text message services offered to Alltel subscribers by third parties.

8. In the years 2005 through 2007, and during the first three months of 2008, on behalf of m-Qube, Alltel billed its subscribers the following amounts for charges for premium text message services provided by third parties:

| Year: | Amount Billed: |
|---|---|
| REDACTED | |

9. I have reviewed the information contained in the August 14, 2006, through March 14, 2008 billing statements for the account containing Plaintiff's cellular telephone number, Alltel has charged the account which includes Plaintiff's Alltel cellular telephone number    for premium text message services provided by third parties. During that same time period, Alltel has credited the account which includes Plaintiff's Alltel cellular telephone number    for premium text message services provided by third parties.

CHGO1\31206310.1                                    2

10. To the extent that the above information was compiled from Alltel's records, the records were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, an employee or employees of Alltel in the ordinary cause of business.

Under 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct.

May 13th, 2008   By: /s/ Susan Marion
                      Susan Marion

CHGO1\31206310.1                   3