IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN PANTER, individually and on behalf of a class of similarly situated individuals, ) ) ) | |
| Plaintiff, ) ) | |
| ) | No. 08 CV 2097 |
| v. ) ) | Judge Moran |
| ALLTEL CORPORATION ) d/b/a ALLTELL WIRELESS, ) ) | Magistrate Judge Brown |
| Defendant. ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND**

Alltel's Response starts with the faulty premise that it is Plaintiff's burden to disprove CAFA jurisdiction and goes downhill from there. The law is clear that Alltel, as the removing party, bears the burden of demonstrating that the amount in controversy exceeds $5 million. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006). Rather than attempt to meet this burden, Alltel claims that because Plaintiff alleges that it "deliberately" and "systemically" billed customers for unauthorized charges, it should be assumed that some 8% of the total charges billed to Illinois consumers were alleged to have been unauthorized, thus putting over $5,000,000 in damages at issue. As two judges in this District and one in Florida have held in rejecting identical arguments advanced by carriers in parallel actions,[1] Alltel's arguments fail to withstand scrutiny. *See Fiddler v. AT & T Mobility, LLC*, No. 08-416, 2008 WL 2130436 (N.D. Ill. May 20, 2008); *Paluzzi v. Cellco P'ship*, No. 08 C 0405 (N.D. Ill. Apr. 29, 2008) (attached hereto as Exhibit A), *petition for leave to appeal denied*; *Gray v. Cellco P'ship*, No. 08-60146 (S.D. Fla. March 26, 2008) (attached hereto as Exhibit B).

---

[1] Those cases are being prosecuted by the same attorneys involved in the instant case.

## A. Alltel bears the burden of establishing CAFA jurisdiction

Alltel's brief begins with the peculiar claim that "Plaintiff has not presented or pointed to any evidence or allegations that" suggest jurisdiction in this Court is improper. (Def. Resp. in Opp. to Pl.'s Mot. to Rem. at 1). *It is Alltel, as the removing party, however, that bears the burden of proving – by a preponderance of the evidence – that the CAFA requisites have been satisfied*, and specifically that the amount in controversy exceeds $5 million. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006). "Whichever side chooses federal court must establish jurisdiction; it is not enough to file a pleading and leave it to the court or the adverse party to negate jurisdiction." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir. 2005). Alltel improperly attempts to shift the burden of proof to Plaintiff because Alltel has altogether failed to meet its burden.

## B. Alltel has not given a plausible good-faith estimate

Alltel suggests that Plaintiff's Complaint places the company's total revenue from third party mobile content services in controversy, thus exceeding the $5 million CAFA threshold. (Def. Resp. in Opp. to Pl.'s Mot. to Rem. at 8-9, 11). That is not so: Plaintiff does not claim that *all* amounts billed and collected for mobile content were improper, only that *some* charges were in fact unauthorized. In fact, Plaintiff's Complaint makes explicit the obverse, i.e. that he is only suing to recoup the unauthorized charges. His class, thus, is expressly limited to persons who "suffered losses or damages as a result of [being charged for] services not authorized by the subscriber[.]" (Comp. ¶ 37.) And, his causes of action are similarly focused solely on the recoupment of unauthorized charges. (See, e.g., Comp. ¶ 50.) (alleging that Defendant breached its contracts by "billing Plaintiff and the Class for products or services, *the purchase of which they never authorized*."); (Comp. ¶ 7.)

The simple truth is the following: Unless Alltel demonstrates what *percentage of charges were in fact unauthorized*, its revenue figure is meaningless and does not sustain its burden of proof under *Brill*. *See Fiddler* 2008 WL 2130436 at *2 (remand where defendants' evidence of "total sales during the relevant time period brings [d]efendants no closer to establishing the amount in controversy in this case since [d]efendants have not provided even an estimation of the portion of total sales implicated by [plaintiff's] claims"); accord *Paluzzi* at 3; *Gray* at 4.

In fact, Alltel acknowledges Plaintiff does not specifically allege "either the number of customers that would be included in the class or the total dollar amount sought." (Def.'s Resp. in Opp. to Pl.'s Mot. to Rem. at 8). Rather, Alltel argues that the comparison between its revenue and Complaint's purportedly "strong language" is sufficient to establish the $5 million amount in controversy. (*Id.*) Alltel effectively invites the Court to either 1) assume that 8% of this mobile content revenue was unauthorized or 2) to speculate as to the size of the class and each individual class members' damages. (*See id.* at 9.) Alltel invites the Court to commit error.

Mere speculation is not enough to meet Alltel's burden. *See Reason v. General Motors Co.*, 896 F. Supp. 829, 835 (S.D. Ind. 1995). Nor is simply asserting the percentage of total revenue needed to meet the CAFA threshold. *See Paluzzi* at 3. In *Paluzzi*, defendant Verizon Wireless ("Verizon") argued that to meet the CAFA threshold, the unauthorized charges complained of need only represent 38% of its total mobile content revenue. *Id.* The *Paluzzi* court was not persuaded by that calculation, holding that regardless of the percentages, Verizon failed to provide the evidence necessary for the court to make a determination as to the amount in controversy. *Id.* Alltel attempts to distinguish *Paluzzi*, not by arguing that it has provided the necessary evidence, but rather by stating that "[h]ere, the Court need only determine that less

than 8% of the billings at issue may have been unauthorized." (Def.'s Resp. in Opp. to Pl.'s Mot. to Rem. at 9 n.6.) This argument misses the point: Alltel has provided no basis whatsoever to believe that 8% of its billings were, in fact, unauthorized.[2] Likewise, in *Fiddler*, the defendants sought jurisdiction under CAFA based on evidence of one defendant's "total gross revenue from third-party mobile content from Illinois subscribers' and the 'aggregate retail value of the traffic' processed by the other." *Fiddler*, 2008 WL 2130436, at *2. This incomplete evidence failed in *Fiddler*, it failed in *Gray*, and it fails here as well.

Alltel goes further, arguing that Plaintiff's prayer for punitive damages and injunctive relief "further escalates the amount in controversy." (Def.'s Resp. in Opp. to Pl.'s Mot. to Rem. at 9-10). Punitive damages may be considered in determining the amount in controversy, but only as a multiplier of the underlying compensatory damages. *Munro v. Golden Rule Ins. Co.*, 393 F.3d 720, 721-22 (7th Cir. 2004). Here, a punitive damages multiplier cannot aid Alltel, because it has not presented any evidence of the underlying compensatory damages which might be multiplied. *See Paluzzi* at 3 (refusing to use punitive damages as a way to meet the CAFA threshold where defendant had failed to provide enough evidence to prove amount of potential compensatory damages). Injunctive relief may also be counted towards the amount in controversy – where it is supported by adequate evidence. Absent some evidence from Alltel as to how much injunctive relief would cost it or benefit Plaintiff, injunctive relief cannot be considered towards the amount in controversy. *Integrated Genomics, Inc. v. Kyrpides*, No. 06-6706, 2008 WL 630605 (N.D. Ill. Mar. 4, 2008) (statement that defendants "would surely have

---

[2] Alltel also seeks to distinguish *Gray*, again proceeding under the broad mischaracterization of Plaintiff's Complaint and arguing that the claims in this case are much larger than those in *Gray*, making *Gray* inapplicable. (Df.'s Resp. in Opp. to Pl.'s Mot. to Rem., 11). Under almost identical circumstances to this case, the *Gray* court held that it was improper to speculate as to the size of the class and the claims of each class member, or to assume that a certain percentage of charges were unauthorized. *Gray* at 4.

some costs involved in implementing" injunctive relief failed to sustain burden of proving amount in controversy by preponderance of evidence); see *also West Bend Elevator, Inc. v. Rhone-Poulenc S.A.*, 140 F. Supp. 2d 963, 969 (E.D. Wis. 2000). Hence, Alltel's reliance upon *Home Depot, Inc. v. Rickher*, No. 06-8006, 2006 WL 1727749 (7th Cir. 2006), is misplaced. While the *Home Depot* court did include the cost of injunctive relief in its assessment of the amount in controversy, it did so only after the defendant had provided sufficient evidence of the costs of such relief. *Id.* at *2. Again, Alltel has provided no evidence of that here.

Because it presented no evidence by which to calculate the amount in controversy, Alltel has failed to meet its burden. Furthermore, given the absence of such evidence, Alltel lacked an objectively reasonable basis for seeking removal.

### C. Plaintiff Should be Awarded Attorneys' Fees and Costs

Lacking sufficient evidence and an objectively reasonable basis for seeking removal, the effect of Alltel's motion was to prolong litigation and impose costs on Plaintiff. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). Therefore, Plaintiff should be awarded the attorneys' fees and costs associated with presenting this motion. *See id.* at 141.

### CONCLUSION

Alltel has failed to satisfy its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $5 million. Therefore, this Court lacks jurisdiction over the underlying matter. For the foregoing reasons, this case should be remanded to state court and Defendant Alltel Corporation should be ordered to pay Plaintiff attorneys' fees and costs.

Dated: May 27, 2008

Respectfully Submitted,

By: /s/ Myles McGuire
MYLES MCGUIRE
One of the Attorneys for Kevin Panter,
individually and on behalf of a class of
similarly situated individuals

Jay Edelson
Myles McGuire
KAMBEREDELSON, LLC
53 W. Jackson Blvd., Ste. 550
Chicago, IL 60604
(312) 589-6370

6

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN PALUZZI, individually and on behalf of a class of similarly situated individuals,<br><br>        Plaintiff,<br>v.<br><br>CELLCO PARTNERSHIP, a Delaware General Partnership d/b/a Verizon Wireless, and MBLOX, INC., a Delaware corporation,<br><br>        Defendants. | No. 08 C 0405<br><br>Judge Robert W. Gettleman |

## ORDER

Plaintiff Susan Paluzzi brought a five count putative class action complaint in the Circuit Court of Cook County, Illinois, against defendants Cellco Partnership d/b/a Verizon Wireless ("Verizon") and mBlox, Inc., claiming that defendants have a practice of unlawfully charging cellular telephone customers for unauthorized products and services. Verizon removed the case to this court based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which gives federal district courts original jurisdiction over class actions in which the amount in controversy exceeds $5 million and any member of a class of over 100 plaintiffs is a citizen of a state different from the state of any defendant. Plaintiff has moved to remand, arguing that the court lacks subject matter jurisdiction and that Verizon has failed to show by a preponderance of the evidence that the amount in controversy exceeds $5 million. The motion is granted.

Plaintiff's complaint, brought on behalf of herself and two classes, seeks to stop Verizon's practice of billing cellular telephone customers for unauthorized mobile content services. Such services, also known as premium text message services, include ringtones, sports score reports, weather alerts, horoscopes, and interactive radio, delivered to customers' mobile

devices. Mobile content service providers charge and collect from their customers by "piggybacking" on cellphone bills sent out by wireless carriers such as Verizon. To accomplish this, mobile content service providers partner with third-party aggregators such as defendant mBlox, who act as middlemen between the numerous mobile content service providers and the carriers. When a mobile content service provider provides its services to a particular carrier's customer, the aggregator with whom the service provider has contracted and the carrier each retain a portion of the mobile content service charge collected from the customer.

Plaintiff claims that Verizon has set up and maintained its billing system in a manner that results in unauthorized and erroneous charges for mobile content services. She seeks to represent two classes: (1) a carrier class; and (2) an aggregator class. Plaintiff asserts claims for breach of contract, restitution, tortious interference with contract, computer tampering in violation of 720 ILCS 5/16D-3 and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act.

Defendant, as proponent of federal jurisdiction, bears the burden of establishing removal jurisdiction. Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 447-48 (7th Cir. 2005). A removing party must prove by the preponderance of the evidence that the amount in controversy exceeds the threshold in order to meet this burden. Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 541, 42 (7th Cir. 2006).

To meet its burden, Verizon has provided evidence that it has 400,000 wireless customers in Illinois who subscribed to premium text messaging services, and that since inception those subscribers have been billed a total of $13 million for mobile services Verizon argues that

2

because plaintiff's complaint places at issue Verizon's entire system for billing mobile content, all charges that Verizon has collected from mobile customers are in controversy.

Verizon characterizes plaintiff's complaint too broadly. Plaintiff's claim includes charges for unauthorized services, not all amounts Verizon has billed and collected for mobile content services. It is impossible to tell from Verizon's submissions how many of its customers were overbilled, and by how much. To conclude that more than $5 million is in controversy the court would have to speculate as to the size of the classes and the average amount of recovery for each class member, or simply assume that the amount overcharged is approximately 38% of the total amount billed by Verizon for mobile content services. Such speculation is an insufficient basis for the assertion of subject matter jurisdiction. See Reason v. General Motors Co., 896 F. Supp. 829, 835 (S.D. Ind. 1995) (citing N.L.F.C., Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 237 (7th Cir. 1993)).

Finally, while defendant's argument that potential punitive damages and attorney's fees should be included in establishing the amount in controversy is legally correct, it is insufficient to carry Verizon's burden. Any award of punitive damages must be based on the amount of compensatory damages awarded, and as already noted that amount is too speculative to be determined. Rather than supplying a good faith estimate of the actual amount in controversy as is Verizon's burden, adding putative damages just adds more speculation into the mix. With respect to attorney's fees, plaintiff is correct that the amount of attorney's fees to be considered as part of the amount in controversy is the amount of fees incurred at the time jurisdiction is invoked. Atteberry v. Esurance Ins. Services, Inc., 473 F. Supp.2d 876, 877 (N.D. Ill. 2007). Although Verizon has failed to provide any evidence of what those fees might be, it is highly

3

unlikely that at this state of the litigation they would amount to a substantial portion of the $5 million required to confer federal jurisdiction under CAFA.

Accordingly, the court concludes that Verizon has failed to provide sufficient evidence that the amount in controversy exceeds $5 million, and consequently removal was improper. Plaintiff's motion for remand to the Circuit Court of Cook County, Illinois is granted. Plaintiff's requests for attorney's fees and costs is denied.[1]

**ENTER:** April 29, 2008

Robert W. Gettleman
United States District Judge

---

[1] Nothing in this order is intended to suggest that the case may not become removable in the future based on a new development. See 28 U.S.C. § 1446(b)2.

4

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 08-60146-CIV-ALTONAGA/Turnoff

LISA GRAY, individually and on behalf of a
class of similarly situated individuals,

    Plaintiff,

vs.

CELLCO PARTNERSHIP, a Delaware
General Partnership d/b/a Verizon Wireless;
and MOBILE MESSENGER AMERICAS,
INC., a Delaware corporation,

    Defendants.

_____/

### ORDER ON MOTION TO REMAND

**THIS CAUSE** is before the Court on Plaintiff, Lisa Gray's ("Gray['s]") Motion to Remand [D.E. 9], filed February 25, 2008. The Court has carefully reviewed the parties' written submissions and applicable law.

Gray has brought this putative class action against Defendants, Cellco Partnership d/b/a Verizon Wireless ("Verizon") and Mobile Messenger Americas, Inc. ("Mobile Messenger"), seeking to stop a practice Gray alleges Defendants engage in of causing cellular telephone customers to be billed for unauthorized and unwanted mobile content services and to obtain redress for persons who have been injured by that practice. Verizon[1] timely removed this action based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which gives federal district courts original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and any member of a class of over 100 plaintiffs is a citizen of a state different from the state of any defendant.

---

[1] Under the Class Action Fairness Act of 2005 no other defendants are required to consent or join in the removal. *See* 28 U.S.C. § 1453(b).

Case No. 08-60146-CIV-ALTONGA/Turnoff

Gray seeks a remand on the ground that Verizon has failed to show by a preponderance of the evidence that the action places at least $5 million in controversy.

Gray's Complaint contains a count for breach of contract (Count I), restitution/unjust enrichment (Count II), and tortious interference with contract (Count III) on behalf of two proposed classes: as to Count I, a Carrier Class, and as to Counts II and III, a Mobile Content Provider Class. The "Carrier Class" is defined as a class consisting of all Verizon wireless telephone subscribers in Florida who suffered losses or damages as a result of Verizon billing for mobile content products and services not authorized by the subscriber. The Mobile Content Provider Class consists of all wireless telephone subscribers in Florida who suffered losses or damages as a result of incurring charges on their cellular telephone bills from, or on behalf of, Mobile Messenger which were not authorized by the subscriber. Gray alleges that Verizon, systematically and repeatedly, and without authorization, has been billing its customers for the purchase of products and services not agreed to by the customers and along with third-party services providers, has been profiting significantly through this practice. The disputed services include access to and billing for third-party mobile content services such as ring tones, chat services, horoscopes, stock tips, weather alerts, participatory television, payment services and other forms of software provided by hundreds of third-party vendors with names such as Mobile Messenger.

Verizon asserts that while the Complaint does not allege an amount in controversy, the $5 million threshold is satisfied for several reasons. First, reading the Complaint as a whole reveals that Plaintiff is challenging Verizon's entire billing system for mobile content charges to Florida wireless subscribers and Plaintiff cannot insist the class she seeks to represent includes only those who may ultimately prove their charges were unauthorized. Verizon relies on the declaration of Bill Medrano,

2

attached to its Notice of Removal, which states Verizon's total charges for mobile content to wireless subscribers in Florida exceeds the sum of $24 million, an amount far greater than the $5 million threshold required for federal jurisdiction under CAFA. Second, even if Plaintiff is not challenging the entire billing system, because Plaintiff is seeking punitive damages, capped at three times the amount of compensatory damages (unless a defendant is shown to have acted with the specific intent to harm the claimant), if Plaintiff merely recovers $1.25 million in compensatory damages (less than 5% of Verizon's total mobile content charges), then the CAFA jurisdictional threshold is satisfied.

Under 28 U.S.C. § 1447(c), a case removed from state court should be remanded if it appears that it was removed improvidently. The burden of establishing federal jurisdiction, as Verizon recognizes, falls on the party who is attempting to invoke the jurisdiction of the federal court. *See McNutt v. Gen. Motors Acceptance Corp. of Indiana, Inc.*, 298 U.S. 178, 189 (1936); *see also Miedema v. Maytag Corp.*, 450 F.3d 1322, 1329-30 & n.8 (11th Cir. 2006) (removing party bears burden of establishing federal jurisdiction under CAFA). Moreover, courts should strictly construe the requirements of removal jurisdiction and remand all cases in which such jurisdiction is doubtful. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). When the plaintiff and defendant clash on the issue of jurisdiction, uncertainties are resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

Where a "'plaintiff has not pled a specific amount of damages, the removing defendant must prove by a *preponderance of the evidence* that the amount in controversy exceeds the jurisdictional requirement.'" *Miedema*, 450 F.3d at 1330 (quoting *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (emphasis added)). Because the amount in controversy is not apparent on the face of Gray's Complaint, the undersigned must necessarily "look to the notice of removal and may

3

require evidence relevant to the amount in controversy at the time the case was removed." *Id.*

Notwithstanding Verizon's characterization of Plaintiff's claims, Gray does not claim that all amounts Defendants billed and collected for mobile content services were improper, rather, she claims that some of those charges were unauthorized and thus improper. To find that more than $5 million is in controversy the undersigned would necessarily have to speculate as to the size of the classes and the likely average amount of recovery for each class member, or assume that approximately 20% of the mobile content service charges were improper.[2] A district court, however, is not permitted to engage in this type of guesswork. *See Lowrey v. Alabama Power Co.*, 483 F.3d 1184, 1210 (11th Cir. 2007). The undersigned agrees with Plaintiff, therefore, that Verizon has failed to adequately demonstrate a relationship between the amount in controversy and the $24 million figure Verizon claims it charged all Florida consumers for mobile content services. *See, e.g., Pearson's Pharmacy, Inc. v. Blue Cross & Blue Shield of Alabama*, 2007 WL 3496031, at *1 (M.D. Ala., Nov. 14, 2007).

As to Verizon's argument that the prayer for punitive damages brings this case within the jurisdictional amount, the Complaint requests exemplary damages if the challenged conduct is proved to be willful. And while the Court must consider punitive damages when determining if the jurisdictional amount in controversy has been satisfied, unless it is apparent that such cannot be recovered, *see, e.g., Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (citations omitted), the Court returns to what sum, if any, is shown by a preponderance of the evidence to be the amount in controversy from which one can extrapolate a punitive damage recovery. *See, e.g., Sharritt v. Liberty Mut. Ins. Co.*, 2005 WL 1505994, at *1 (S.D. Ala. June 24,

---

[2] For example, Gray alleges she was improperly charged $19.99 and further alleges Defendants improperly charged consumers "as little as a few dollars to at most several hundreds of dollars per person."

4

Case 1:08-cv-02097 Document 26-3 Filed 05/27/2008 Page 5 of 6

Case No. 08-60146-CIV-ALTONGA/Turnoff

2005) (finding defendant had not satisfied its burden where it had only shown amount in controversy to be $6,700, thus, punitive damage would have to be more than ten times the compensatory damages). Verizon posits that as little as $1.25 million is necessary for punitive damages in three times that amount to bring this case over the requisite jurisdictional sum. Even assuming that Verizon's estimate is not unreasonably high, the Court must nevertheless reject it because it is not based on any analysis of the evidence at the time of removal. *See Lowrey*, 483 F.3d at 1210 (rejecting defendants' argument that, to reach the jurisdictional threshold, each of the roughly 400 plaintiffs need only recover on average $12,500 – "a relatively low hurdle" – because it would require the court to engage in "impermissible speculation"). The punitive damages discussion, therefore, simply adds more speculation to a record insufficient to satisfy Verizon's burden as the removing party.

Resolving all doubts in favor of remand, as the Court must, *see, e.g., Miedema*, 450 F.3d at 1328-29, it is

**ORDERED AND ADJUDGED** that the Motion to Remand **[D.E. 9]** is **GRANTED** and this cause remanded to the Seventeenth Judicial Circuit, in and for Broward County, Florida. The Clerk of Court is directed to mark this case as **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 25th day of March, 2008.

*Cecilia M. Altonaga*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   Hon. William C. Turnoff
      counsel of record

5