

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN PANTER, individually and on behalf of a class of similarly situated individuals, )<br><br>Plaintiff, )<br><br>vs. )<br><br>ALLTEL CORPORATION d/b/a ALLTEL WIRELESS, )<br><br>Defendant. ) | No. 08 C 2097 |

## MEMORANDUM OPINION AND ORDER

Defendant removed this class action from state court, and plaintiff moves to remand. The motion is denied. The only disagreement here is whether the amount in controversy exceeds $5,000,000, the threshold amount for removal pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d). We conclude that defendant has proved by a preponderance of the evidence that the amount in controversy can reasonably exceed the threshold amount.

According to plaintiff, he is a consumer of cellular telephone services and defendant is a provider of those services. Those services go beyond sending and receiving telephone calls. They can include "premium" text message or "mobile content" services. That means the consumer can receive a variety of other services, including sports scores, stock tips, direct payment services and participatory television. The provider engages an "aggregator," a company that acts as an intermediary between the provider and various companies that provide mobile content services. The way the system is supposed to work, according to the complaint, is that the consumer who wants sports scores authorizes those services. The mobile content company (with the help of the aggregator) arranges for the provision of those services

through the telephone services provider. Those mobile content services, when used, are billed and collected as a "piggyback" billing included with the telephone services billing, and the proceeds are then distributed to the telephone services provider, the aggregator and the mobile content services provider, as previously agreed.

Plaintiff contends that the system has not worked the way it is supposed to. Rather, he claims that mobile content service providers, working with telephone service providers through aggregators, have billed and continue to bill for services neither authorized nor received. Plaintiff seeks recovery for a consumer class of those who paid unauthorized charges collected through the telephone service provider billing system.

The legal standards applicable to remand motions have recently been discussed on several occasions in this circuit, primarily in opinions authored by Chief Judge Frank Easterbrook. The first was Brill v. Countrywide Home Loans, Inc., 427 F.3d 446 (7th Cir. 2005). The court recognized that the proponent of federal jurisdiction had the burden of persuasion. But the issue is not what the plaintiff will recover, but the amount in controversy. Once that is established, only a "legal certainty" that any judgment will be less, forecloses federal jurisdiction – the same construct as that for determining the minimum jurisdictional amount in diversity cases, as set forth in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1938).

That was followed by Meridian Security Insurance Co. v. Sadowski, 441 F.3d 536 (7th Cir. 2006). There the court rejected previously relied upon language, "reasonable probability that jurisdiction exists," because it had commonly and erroneously been taken to mean that the proponent of jurisdiction had to prove likelihood of recovery. The court explained that proof related to contested factual allegations and that jurisdiction is a legal conclusion – a

consequence of fact rather than a provable fact. The amount in controversy can be established through contention interrogatories, admissions, calculations from the complaint's allegations, the plaintiff's informal or formal estimates, settlement demands or other means.

Next was Oshana v. Coca-Cola Co., 472 F.3d 506 (7th Cir. 2006), where Judge Sykes was the author. There it was pointed out that a plaintiff who does not want to be in federal court often provides little assistance in determining the amount in controversy. "In such case, a good-faith estimate of the stakes is acceptable if it is plausible and supported by the preponderance of the evidence." Id. at 511. Finally, in Spivey v. Vertrue, Inc., ___ F.3d ___, 2008 WL 2357099 (7th Cir. June 11, 2008), the court again referred to plausibility, an approach supported in another context in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007). Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000, the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.

How to explain the relationship of this law and the facts here is burdened by defendant's reluctance to disclose publicly its national sales over time of particular services. The Susan Marion affidavit, filed by defendant under seal, sets forth defendant's mobile content services sales 2005-March 2008, and its mobile content services sales for that period through the aggregator mentioned in the complaint. While we do not feel free to disclose those figures, we do believe we can disclose a conclusion derived from those figures: that the sales of mobile content services for that period is a substantial multiple of $5,000,000.

That conclusion is a provable fact; it is not disputed by plaintiff. Emphasis upon the business actually done is comparable to the approach taken in Brill and Spivey. See also The Home Depot, Inc. v. Rickher, 2006 WL 1727749 (7th Cir. 2006). It is plausible that

unauthorized charges could be in excess of $5,000,000, given the magnitude of total sales. Moreover, the plaintiff's complaint alleges a nationwide class with possible recovery of up to "several hundreds of dollars per person" (cplt. ¶28). Although neither party has provided us with an estimate of the number of customers affected, if we look at the sales figures provided in the Marion affidavit and compare those figures to the plaintiff's individual loss of $235 (Marion aff. ¶9), we have no trouble extrapolating that the amount in controversy in this action may well exceed $5 million. In those circumstances we cannot say to a legal certainty that the amount in controversy is less than that amount.

                                                JAMES B. MORAN
                                                Senior Judge, U. S. District Court

July 11, 2008.